## Johnson's Estate.

*Decedents' estates—Widow's exemption—Desertion—Separation —Fiduciaries Act of 1917, P. L. 447, section 12.*

A wife, wrongfully induced by her husband to leave their home, does not by such separation forfeit her right to the widow's exemption.

232, (1922).]    Statement of Facts—Arguments.

Argued November 14, 1922.  Appeal, No. 133, Oct. T., 1922, by Augusta J. Maus, from order and decree of the Orphans' Court of Montour County, Oct. T., 1920, No. 4, dismissing exceptions to the report and return of appraisers of the real estate upon claim of widow's exemption in the estate of John J. Johnson, deceased.  Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Petition for confirmation of widow's exemption and appointment of appraisers of real estate.  Before SMITH, P. J., 34th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

The court confirmed the report and return of the appraisers and dismissed exceptions thereto confirming the claim of the widow to the statutory exemption.  Augusta J. Maus appealed.

*Error assigned* was the decree and order of the court.

*R. Scott Ammerman,* for appellant.—There is no justification for a separation of husband and wife short of moral wrong or personal violence: Van Dyke v. Van Dyke, 135 Pa. 459.

A mere quarrel is not justification: Whelan v. Whelan, 183 Pa. 293.

The burden was on claimant to justify the separation by such evidence as would entitle her to a divorce: Renard v. Renard, 60 Pa. Superior Ct. 386.

*R. S. Hemingway,* and with him *R. R. John,* for appellee.—Separation is not desertion: Moore's App., 2 Pennypacker 110; Moses v. Moses, 77 Pa. Superior Ct. 154; Bracken v. Bracken, 77 Pa. Superior Ct. 219; Schreckengost's Est., 77 Pa. Superior Ct. 235.

OPINION BY LINN, J., December 14, 1922:

Decedent's sister appeals from the allowance of the exemption claimed by her brother's widow under section 12 of the Fiduciaries Act of 1917, P. L. 447, 471, contending that by desertion the widow forfeited her rights. The decision turns on the sufficiency of the evidence. The court below held there was no desertion, and we agree. Appellant relies on the fact that nearly thirteen months before decedent's death, his wife moved from the house in which they had been living and never returned. The widow has justified her conduct. We accept the evidence to the effect that appellant successfully conspired with her brother to separate him from his wife and family. It is well settled that such separation does not deprive a widow of her exemption. It was long ago held that a man may not turn his wife out of doors; our statute against it is a municipal regulation for the protection of the community as well as the wife: McDermott's App., 8 W. & S. 251, 256.

Decedent died October 16, 1918, living in the home of his sister, the appellant. His family, composed of his wife, son and the son's wife, separated from him on September 25, 1917. Decedent and his wife were married in 1890, and in 1892 became tenants on an eighty-two-acre farm belonging to appellant; they occupied an eight-room house and farmed the place. In 1910 decedent had a paralytic stroke which seriously incapacitated him, and after about 1914, left him so feeble he was practically unable to work. He owned a house in Milton, Pa., rented for $16 a month. They had a son, who before and after his marriage, assisted in the farming, lived in the house with them, and helped support decedent until the separation. Such additional support as decedent required for some time prior to the separation, was furnished by his wife, who had some livestock and a truck patch producing income. There is abundant evidence that the widow gave decedent no cause for complaint. If we may judge from the fact that

shortly after the separation he confessed judgment in favor of appellant in a sum in excess of the value of all his property, he was probably insolvent before the separation.

For fourteen years prior to the separation, appellant and the widow were estranged. Appellant testified her brother was "very feeble" and not "competent and able to maintain and care for himself." She lived on another farm owned by her in the vicinity. She testified that about four days before the separation she caused the sheriff to serve a notice upon her brother "on the following Wednesday" to vacate the premises, occupied since 1892. She said she had rented the farm to another tenant who would occupy another house on the farm, so that the use of the house occupied by her brother was not required for the new tenant. She also said that, when she rented the farm to the other tenant, she agreed with her brother, that he and his family might occupy one-half of the eight-room house in which they had always lived, and she, the appellant, would occupy the other half, each to have two rooms on the first floor and two on the second. She testified she gave this notice to quit at the request of her brother. The sheriff appeared and read the notice to her brother, whose comment was "it is all right, [appellant] knows what she is doing." The notice was not left with him, and the record does not contain a copy. Appellant states she wished to move into the other half of the house in order to take care of her brother, although there is ample evidence that he had been properly cared for by his wife.

The widow testified that in June, 1917, appellant "came up to my house and abused me and she took my husband on the porch and said 'you stand by me, and I will stand by you' and he shook his head and that was turning my husband against me." The widow never saw the notice served by the sheriff but was told of it, whereupon she consulted counsel who advised her to move

away from the house if appellant came to live there. Accordingly on the day designated by the notice to vacate, the widow, her son and daughter-in-law moved to a house about a mile away. Before leaving, both the widow and their son attempted to persuade decedent to go with them, stating that they would take care of him as he required, but he refused to go. She explained to him that she "could not stay in that house if his sister came there......" As soon as the widow moved out, the appellant came in, and thereafter took care of her brother,—in that house until June, 1918, and thereafter until his death, in her own house.

In September, 1917, decedent's condition was such that his wife's services and her contribution to his support were necessary to the maintenance of the family relation; into that family relation, happily maintained, this appellant interjected herself without apparent reason and against the protest of the wife who alone had kept and could keep the family together. After the estrangement indicated, and appellant's conduct pursuant thereto, she cannot have expected that her sister-in-law would tolerate her under the same roof for the purpose of caring for the husband, and he must be held to have intended the same result, for he refused to go with his wife, notwithstanding her reasonable requests and her warning that she could not have decedent's sister live in the same house for causes he understood.

In Moore's App., 3 Penny. 110, a separation caused by "the evil influence of mischief-making relatives" did not forfeit the claim for exemption. It is unfortunate that in his helpless condition, decedent was persuaded to unite with his sister in directing the sheriff to notify him to vacate their home of twenty-five years; his agreement with his sister to occupy one-half of the house with her in the other half does not save the situation. He was not then in any potential sense the head of the family, but physically unable to do anything alone, and dependent upon his family for sustenance; his wife

could not be expected or required to divide her care of her husband with a conspiring sister-in-law. We cannot hold that the wife was not justified in concluding that it was the purpose of the husband to turn her out of doors. We are not concerned on this record with the effect of the wife's failure at the time legally to assert her rights against the mischievous intrusion of appellant. It is sufficient that enough appears to sustain the conclusion that she may have her exemption.

The assignments of error are overruled and the order appealed from is affirmed at the costs of appellant.